IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Stephon R. Saunders,                    :

      Plaintiff,                    :

   v.                                   :          Case No. 2:14-cv-493

                           :          JUDGE GEORGE C. SMITH
Commissioner of Social Security,        Magistrate Judge Kemp
                           :
      Defendant.

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Stephon R. Saunders, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits. That application was filed on June 3, 2010, and alleged that Plaintiff became disabled on June 15, 2008.

After initial administrative denials of his claim, Plaintiff was given several administrative hearings before an Administrative Law Judge. In a decision dated January 18, 2013, the ALJ denied benefits. That became the Commissioner's final decision on May 28, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 12, 2014. Plaintiff filed his statement of specific errors on September 19, 2014, to which the Commissioner responded on December 24, 2014. Plaintiff filed a reply brief on January 7, 2015, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

At the first administrative hearing, held on January 19, 2012, Plaintiff was advised about some of the procedures and told the ALJ about some additional medical tests he was having. He

did not provide any significant amount of testimony.  The matter was then continued.  The next hearing was set for March 13, 2012.  At the beginning of that hearing, Plaintiff's counsel asked for a continuance based on the fact that he had only recently been retained.  Some testimony was taken, however.  The ALJ noticed that Plaintiff was on oxygen at the time of the hearing, and Plaintiff said he had been given what he described as "walking oxygen" by his doctor at the VA clinic.  He needed it for walking longer distances, but did not usually use it during the day.  The hearing was closed after that testimony, and a third hearing was set for August 2, 2012.

At the third hearing, it was determined that additional records had been submitted which the ALJ had not had a chance to review.  The matter was then set for a fourth hearing on December 18, 2012.  Plaintiff's testimony at that hearing begins at Tr. 43.

Plaintiff was 51 years old at the time of the hearing.  He graduated from high school and had some vocational training.  He also served in the military for six years.  He was able to drive and did so several times a week.  He last worked as a detailer but could not recall exactly when he stopped.  He got fired for allowing someone else to ride in a vehicle he was supposed to detail.

In 2008, Plaintiff experienced some heart problems which caused him to stop working for a time.  He experienced shortness of breath and difficulty standing for long periods of time.  He did factory work before doing the detailing job.

Plaintiff described some arthritis in his right hand, as well as a prior injury to that hand.  The hand would go numb in colder weather.  He had had back pain in the past, but it had resolved.  He testified to problems with depression and he had some past psychiatric hospitalizations in the 1990s.

-2-

In a typical day, Plaintiff got up around 6:00 to see his wife off to work, and then went back to bed for a few hours.  He took medication after that and might sit at the computer for 45 minutes before lying down.  He could fix himself a sandwich for lunch and would lie down again in the afternoon.  He took four breathing treatments daily.  He was able to do some basic chores like vacuuming and dishwashing.  Sometimes family members came to visit him.

Plaintiff said that his heart condition was his major problem, but he also reported occasional problems with concentration and memory.  He testified to issues with people at work.  He thought he could walk a block, stand for half an hour at a time (but repeatedly throughout the day), and lift a gallon of milk.

### III.  <u>The Medical Records</u>

The medical records in this case are found beginning on page 339 of the administrative record.  The pertinent records - those relating to Plaintiff's two statements of error - can be summarized as follows.  Most of the records come from the VA system, which explains the large volume of medical evidence. Plaintiff cites to the portions of the records he believes to be pertinent, and the Court will focus on those, although it has reviewed the balance.

First, Plaintiff notes that in 2010, Dr. Zangmeister completed a form stating that Plaintiff suffered from coronary artery disease with an onset date of June 1, 2010.  Dr. Zangmeister said that the anticipated date of recovery was "unknown" and that Plaintiff could not perform any type of work. Dr. Zangmeister also listed, on a separate sheet, Plaintiff's "medical problem list," which included not only coronary artery disease but, among other things, high blood pressure, GERD, a mood disorder, sleep apnea, and obesity.  (Tr. 959-60).

-3-

Next, Plaintiff was referred for a physical capacity assessment in February, 2012.  Dr. Zangmeister was listed as his primary care physician.  His medical history included having two stents placed in his heart.  He reported some amount of pain in his shoulders, right foot, and right ring and little fingers.  His self-report showed that he could walk at home for 25% of the day, stand for the same amount of time, sit up to 50% of the time, and carry five pounds.  Some shortness of breath was noted even when Plaintiff was sitting.  He could squat with difficulty.  His blood pressure was elevated at the beginning of the evaluation because he had not taken his blood pressure medication that morning.  (Tr. 1107-1112).  At the second phase of the assessment, which took place two months later, Plaintiff reported increased shoulder and low back pain, but decreased foot and hand pain.  No testing could be done because he also reported a significant level of chest pain that day.  (Tr. 1120-22).  The record does not show completion of this assessment.  Plaintiff did go to Genesis Hospital after the attempted assessment, where his chest pain resolved.

A fairly extensive treatment note was made on May 22, 2012.  It recites that Plaintiff had a stent placed in the posterior circumflex artery in 2006 and that an arteriogram done in July 2010 showed an occluded right coronary artery.  Plaintiff had complained of chest pain in 2011 and had an arteriogram done again, which showed essentially the same thing.  Only medication therapy was recommended at that time.  Plaintiff continued to have atypical chest pain which was not brought on by exertion and which lasted up to 30 minutes after use of nitroglycerin.  A treadmill nuclear myocardial perfusion study was ordered.  (Tr. 1159).  It did not show any abnormality.  (Tr. 1237).

Dr. Reddy, who is apparently not otherwise identified in the record, completed a Physical Capacity Evaluation form on July 18,

-4-

2012.  The form lists Dr. Zangmeister as Plaintiff's doctor.
According to the form, Plaintiff could not stand, sit or walk for
a total of eight hours in a workday, could do no lifting, and
could never squat, crawl, climb steps or ladders, or reach above
shoulder level.  Also, Plaintiff would be affected by stress and
would miss work 5 or more days per month.  (Tr. 1190-91).

In addition to these records, the file contains evaluations
by state agency physicians.  In 2010, Dr. Gahman said that
Plaintiff could do a limited range of light work, with
environmental restrictions.  (Tr. 95-96).  That assessment was
affirmed by Dr. Holbrook in 2011.  (Tr. 114-15).

### IV.  The Vocational Testimony

George W. Coleman III was the vocational expert in this
case.  His testimony begins on page 57 of the administrative
record.

Mr. Coleman first identified Plaintiff's past work as a car
detailer as unskilled and medium.  His other work was classified
as warehouse worker, and that was also unskilled and medium.  He
also noted that Plaintiff worked as a forklift operator, which is
a semi-skilled medium job.

Mr. Coleman was then asked some questions about a
hypothetical person who could work at the light exertional level
but who could never climb ladders, ropes, or scaffolds, and who
could not be exposed at all to moving machinery or unprotected
heights and could not tolerate concentrated exposure to dust,
fumes, gases, or extremes of temperature or humidity.  The person
could carry out both simple and complex tasks and instructions
and could maintain concentration and attention for two-hour
segments.  The person could tolerate casual and infrequent
interaction with others and could respond appropriately to
supervisors and coworkers.  Finally, the person could adapt to
simple changes and avoid hazards in a work setting without strict

production quotas.  Mr. Coleman testified that such a person could not do any of Plaintiff's past work, but he or she could work as a routing clerk, bench assembler, or hand packager.  He provided numbers for those jobs in the regional and national economies.

Mr. Coleman further testified that someone who had to take unscheduled breaks every two hours in order to lie down and rest could not be employed.  He also said that someone who had to sit every ten minutes could not do the jobs he identified, and someone who could use his dominant hand only occasionally could do some light jobs but no sedentary ones.  Finally, a person who would be off-task for 20 percent of the day or absent more than four to eight hours a month could not remain employed.

V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 19-32 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  Next, he found that Plaintiff had not engaged in substantial gainful activity since June 15, 2008. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including coronary artery disease, obesity, sleep apnea, and a mood disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff could work at the light exertional level but could never climb ladders, ropes, or scaffolds, and could not work around moving machinery or unprotected heights.

-6-

He also could not work around concentrated dust, fumes, gases, or work in extremes of temperature or humidity.  Plaintiff could carry out both simple and complex tasks and instructions and could maintain concentration and attention for two-hour segments. Finally, the ALJ concluded that Plaintiff could respond appropriately to supervisors and coworkers in a task-oriented setting, could have casual and infrequent contact with others, and could adapt to routine work changes with no strict production quotas where he also needed to avoid hazards.  The ALJ found that, with these restrictions, Plaintiff could not do his past work.  However, he also determined that Plaintiff could do the jobs identified by the vocational expert, including routing clerk, bench assembler, and hand packer.  The ALJ further found that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ failed to weigh properly the opinions of his treating physician, Dr. Reddy; and (2) the ALJ failed to consider the effect of Plaintiff's obesity on his residual functional capacity.  These issues are evaluated under the following legal standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th

Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

## A.   The Treating Physician

Plaintiff focuses on the single form which Dr. Reddy completed in July, 2012, which was some seven months after his last insured date.  The form indicates physical restrictions which are inconsistent with employability.  According to Plaintiff, the ALJ did not clearly state how much weight was given to Dr. Reddy's opinion, did not apply the specific factors set forth in 20 C.F.R. §404.1527(c) in his analysis, and provided reasons for rejecting Dr. Reddy's opinion which were not supported by substantial evidence.  In order to assess this claim of error, the Court will first set out what the ALJ said in his decision about Dr. Reddy's opinion.

The ALJ provided this analysis.  After acknowledging that Dr. Reddy was one of Plaintiff's treating physicians at the VA, the ALJ said:

> I cannot give controlling weight to this opinion.
> First, it is dated after his date last insured.
> Second, the severity of these limitations is not

supported by the evidence of record that shows the claimant has not had recurrence of angina or difficulty with his right hand.  Third, a limitation of no lifting is not reasonable considering the objective evidence in the record but also the claimant's daily activities that includes grocery shopping.  And fourth, as previously described, the claimant's activities of daily living are inconsistent with these restrictions and is (sic) also not consistent with the claimant's testimony that he would be able to stand/walk three to four hours per day.

(Tr. 27-28).  The ALJ did not discuss or enumerate the various factors relating to the evaluation of a treating source opinion which are found in the regulations, but did say that he had considered the opinion evidence "in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 28).

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation

-9-

so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The parties have both briefed the issue of whether the ALJ adequately indicated how much weight he gave to Dr. Reddy's opinion. The Commissioner contends that it is apparent, even if the ALJ did not say it explicitly, that he gave no weight to Dr. Reddy's conclusions; Plaintiff counters that simply refusing to give the opinion controlling weight, without then stating how much weight was afforded to it, amounts to reversible error.

There is language in the case law suggesting that result. For example, in Stancato v. Comm'r of Social Security, 2014 WL 4792560, *5 (N.D. Ohio Sept. 24, 2014), the court said that an ALJ must "structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight." That decision construed Wilson as holding that the articulation requirement found in 20 C.F.R. §404.1527(c) is violated if the ALJ rejects the opinion of a treating source without assigning weight to that opinion. However, the court in Reagan v. Colvin, 47 F.Supp.3d 648, 663 (E.D. Tenn. 2014) pointed out that "some deviation from the rules that require an ALJ to state the weight given to a treating physician's opinion is not necessarily fatal to an ALJ opinion." That decision, relying on Francis v. Comm'r of Social Security, 414 Fed. Appx. 802, 805 (6th Cir. March 16, 2011), concluded that if the ALJ's decision served the purposes behind §404.1527(c) by allowing both the reviewing court and the claimant to understand exactly how the treating source opinion was weighed, the failure to state explicitly how much weight was given to a treating source opinion might be harmless error. However, there, because the Commissioner took inconsistent positions on whether the ALJ

-10-

afforded no weight, or some weight, to the treating source opinion, and because the ALJ's decision was confusing enough to leave the "claimant and [the] reviewing court wondering what, if any weight, was given to the opinion and why," the court found that the error was not harmless.  Reagan, 47 F.Supp.3d at 664. See also Shlimon v. Comm'r of Social Security, 2013 WL 3285136, *13 (E.D. Mich. June 28, 2013)("the ALJ did not explicitly assign a weight to Dr. Steppe's opinion, which, of course, makes it difficult for the Court to carry out its duty of determining whether substantial evidence supports the weight assigned").

This Court has weighed in on the issue as well.  For example, the Court in Horn v. Comm'r of Social Security, 2014 WL 5107598, *7 (S.D. Ohio Oct. 10, 2014), reacted to the Commissioner's argument about an ALJ's implicit assignment of weight to a treating source opinion by saying that "[w]hile it is implicitly clear that the ALJ rejected virtually all of [the treating source]'s opinions, remand is required because he failed to explicitly state what weight he was giving to [those] opinions."  One of the cases cited in Horn, Lantz v. Astrue, 2010 WL 545894, *14 (S.D. Ohio Feb. 16, 2010), construed both Wilson and Social Security Ruling 96-2p and said this:

> [T]he administrative law judge committed reversible
> error by failing to state what weight, if any, he gave
> to the opinions of [the treating sources].  Even where
> the administrative law judge determines not to give the
> opinion of a treating physician controlling weight,
> Social Security regulations and the law of the Sixth
> Circuit nonetheless require the administrative law
> judge to determine and articulate on the record the
> amount of weight given to the opinion.

As in the other decisions cited above, Lantz found the error not to be harmless because the ALJ failed to discuss the regulatory factors and did not explain how they supported the weight given to the treating source opinions.  All of these cases recognize that a remand based upon this type of articulation error might

-11-

not ultimately change the result of the case, but, following Wilson, conclude that unless the opinion is so patently deficient that no reasonable person could rely on it, remand is still necessary to address the procedural violation.

Here, it is clear from the ALJ's decision that he gave no weight to at least one of Dr. Reddy's opinions - the conclusion that Plaintiff could not do any lifting.  The ALJ's other reasons for refusing to give controlling weight to the opinion - that it post-dated the last insured date by a few months, that the record does not show ongoing problems with either angina or Plaintiff's right hand, and that Plaintiff testified to activities of daily living which may be somewhat inconsistent not only with the lifting restriction, but also the standing and walking limitations contained in Dr. Reddy's opinion - do not clearly suggest that the ALJ discounted Dr. Reddy's views entirely and gave them no weight.  They also do not explain why that would be the case.  As Plaintiff points out, the ALJ does not mention any of the relevant regulatory factors - which may not, in itself, necessarily require remand, but which is relevant to this particular articulation issue - and there are various aspects of Dr. Reddy's opinion which the ALJ does not address at all.  Under these circumstances, the Court finds both that the ALJ did not articulate the weight given to Dr. Reddy's opinion in accordance with §404.1527(c) and that this articulation error is not harmless.  Consequently, the case must be remanded for a further explanation of how much weight the ALJ gave to Dr. Reddy's opinions, and why.  Once that occurs, if the decision is still adverse to Plaintiff, the Court will be better able to determine if the reasons provided have substantial support in the record.

### B.   Obesity

Plaintiff's second claim of error relates to the ALJ's consideration of obesity as a limiting factor in functioning. Plaintiff notes that under Social Security Ruling 02-01p, an ALJ

-12-

is required both to determine if obesity is a severe impairment, and then to consider how a claimant's obesity combines with his other impairments (such as sleep apnea) to affect his ability to function in the workplace.  Relying heavily on Smith v. Comm'r of Social Security, 2014 WL 4351517 (S.D. Ohio Sept. 2, 2014), aff'd 2014 WL 5502358 (S.D. Ohio Oct. 30, 2014), Plaintiff argues that the ALJ did not do this analysis, and, in light of the fact that he had other impairments such as coronary artery disease and sleep apnea which can be enhanced by obesity, the case should be remanded for a more thorough consideration of this issue.

The Commissioner's response is that there is no evidence in the record suggesting that Plaintiff's obesity caused more functional limitations than those addressed by the ALJ.  The Commissioner also notes that Dr. Holbrook, the state agency reviewer, specifically took this impairment into account in determining that Plaintiff could work only at the light exertional level.  Plaintiff does not address this issue in the reply brief.

An ALJ may properly account for a claimant's obesity by relying on the functional capacity assessment of a physician who has taken obesity into account.  See Coldiron v. Comm'r of Social Security, 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010).  That occurred here.  Further, the Court of Appeals has noted that "Social Security Ruling 02-01p does not mandate a particular mode of analysis." Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411 (6th Cir. Jan. 31, 2006).  This Court has held that the failure to mention obesity anywhere in the ALJ's decision can be grounds for remand, see Heighton v. Comm'r of Social Security, 2013 WL 214695, *10 (S.D. Ohio Jan. 18, 2013), adopted and affirmed 2013 WL 449893 (S.D. Ohio Feb. 6, 2013), but that is not this case. As the Commissioner correctly points out, the ALJ specifically found Plaintiff's obesity to be a severe impairment and discussed its functional impact in his step three analysis (Tr. 24).

-13-

The <u>Smith</u> decision does not assist Plaintiff.  In that case, the ALJ failed to consider the claimant's obesity to be a severe impairment and also failed to discuss it at any point in the administrative decision.  Further, as the Court noted, it was by no means clear that any of the physicians on whose opinions the ALJ relied actually accounted in some way for the claimant's obesity.  Since the material facts of this case and that one differ significantly, <u>Smith</u> provides no basis for directing a remand on this issue.

### VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

### VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v.</u>

-14-

<u>Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d
947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
